UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT ELLIS,<br><br>             Plaintiff,<br><br>     v.<br><br>FEINBERG,<br><br>             Defendant. | No. 2:13-cv-1302-EFB P<br><br><br>ORDER |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983.[1] He alleges that defendant Feinberg violated his Eighth Amendment rights by ignoring his complaints of pain caused by a toenail fungus. ECF No. 1. Defendant Feinberg seeks summary judgment. ECF No. 24. Plaintiff opposes the motion and defendant has filed a reply. ECF Nos. 27, 30. For the reasons that follow, defendant's motion for summary judgment is granted.

**I.     Summary Judgment Standards**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary

---

[1] This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1) and is before the undersigned pursuant to the parties' consent. E.D. Cal. Local Rules, Appx. A, at (k).

1

1  judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant
2  to the determination of the issues in the case, or in which there is insufficient evidence for a jury
3  to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600
4  (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.*
5  *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment
6  motion asks whether the evidence presents a sufficient disagreement to require submission to a
7  jury.

8        The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims
9  or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to
10  "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for
11  trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R.
12  Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary
13  judgment practice, the moving party bears the initial responsibility of presenting the basis for its
14  motion and identifying those portions of the record, together with affidavits, if any, that it
15  believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323;
16  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets
17  its burden with a properly supported motion, the burden then shifts to the opposing party to
18  present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*,
19  477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

20        A clear focus on where the burden of proof lies as to the factual issue in question is crucial
21  to summary judgment procedures. Depending on which party bears that burden, the party seeking
22  summary judgment does not necessarily need to submit any evidence of its own. When the
23  opposing party would have the burden of proof on a dispositive issue at trial, the moving party
24  need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National*
25  *Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters
26  which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-
27  24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a
28  summary judgment motion may properly be made in reliance solely on the 'pleadings,

depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

3

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

Concurrent with his motion for summary judgment, defendant advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 24-1; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

## II. Eighth Amendment Standards

To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. Deliberate indifference may be shown by the denial, delay, or intentional interference with medical treatment, or by the way in which medical care is provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also

1 draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if
2 he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing
3 to take reasonable measures to abate it." *Id.* at 847. A physician need not fail to treat an inmate
4 altogether in order to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*,
5 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition,
6 even if some treatment is prescribed, may constitute deliberate indifference in a particular case.
7 *Id.*

8 It is important to differentiate common law negligence claims of malpractice from claims
9 predicated on violations of the Eighth Amendment's prohibition of cruel and unusual punishment.
10 In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not
11 support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.
12 1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi*, 391 F.3d at 1057.

13 **III.     Analysis**

14 Since as early as 2001, plaintiff has experienced recurrences of onychomycosis, a
15 cosmetic condition where fungus grows on his toenails, making them "black and thick." ECF No.
16 24-4 ("Feinberg Decl.") ¶ 2, Ex. A at 1; ECF No. 24-6 ("Yount Decl."), Exs. A & B. Patients
17 who present with toenail fungus generally describe that it is not painful, although it may cause an
18 inconvenience with grooming, as thickened toenails can be harder to trim. Feinberg Decl. ¶ 2. It
19 generally does not impact or decrease one's daily life activities. *Id.*

20 In response to plaintiff's requests for medical care, some doctors have given him
21 antifungal cream, *id.*, Ex. A at 3, 22-29, some have prescribed oral anti-fungal medications, *id.*,
22 Ex. A at 6, 9-10, 14, 16, 18, 20, and others have found that no treatment was necessary, ECF No.
23 24-5 ("Silkwood Decl."), Ex. A at 6-7, 11. Continued use of anti-fungal medications, such as
24 Griseofulvin and Lamisil, risks liver damage. Feinberg Decl. ¶ 6. For this reason, some doctors
25 have declined to prescribe these drugs to plaintiff. *Id.*, Ex. A at 11, 32; Silkwood Decl., Ex. A at
26 9, Ex. B at 14.

27 On July 4, 2012, plaintiff submitted a medical slip requesting treatment for his toenail
28 fungus. Feinberg Decl., Ex. A at 30. This request made no mention of pain. *Id.* On July 17,

2012, plaintiff was seen by defendant, his primary care doctor. *Id.* ¶ 5, Ex. A at 31. This was the first time defendant became aware of plaintiff's toenail fungus problem. *Id.* ¶ 4. Plaintiff explained that his toenails were hard to trim and that in the past he had taken "pills that he had to take blood tests for." *Id.* ¶ 5, Ex. A at 31. After examining plaintiff's toenails, defendant determined that plaintiff had a cosmetic problem that was not harmful or dangerous and needed no treatment. *Id.* ¶¶ 2, 5, Ex. A at 31. Defendant, who has been an internal medicine doctor for several decades, had seen similar conditions in hundreds of patients before. *Id.* ¶¶ 2, 5. Defendant showed plaintiff how to properly care for his nails by clipping them and keeping them clean, and avoiding tight fitting shoes. *Id.* ¶ 5, Ex. A at 31.

A few days after this visit, plaintiff complained in an administrative appeal that defendant had not prescribed him Griseofulvin. Yount Decl., Ex. A. Plaintiff wrote, "I was given Griseofulvin 250 mg which was effective on my toe nail fungus by Dr. Dazo Alfredo. I've seen the doctor July 17, 2012. I'd like to continue taking the nail fungus treatment so I'm asking to have that medication Griseofulvin refilled." *Id.* Again, plaintiff did not state that the toenail fungus was causing him any pain. *Id.*

On August 13, 2012, defendant met with plaintiff for the second time, to respond to plaintiff's administrative appeal. Feinberg Decl. ¶ 6, Ex. A at 32; Yount Decl., Ex. A. At this meeting, plaintiff told defendant that he had taken Griseofulvin in the past for his toenail fungus and that it was very effective and that he wanted to retake it. *Id.* He also stated that he knew he had to take blood tests prior to taking Griseofulvin "because it's dangerous." *Id.* Plaintiff also indicated that the overgrown toenails did not cause him pain. *Id.* Defendant again advised plaintiff that his fungal infection did not require treatment with medication and declined to prescribe Griseofulvin, given the dangerous side effects of the drug. *Id.* Defendant denied plaintiff's administrative appeal. Feinberg Decl., ¶ 7. This was the last time that defendant discussed plaintiff's toe nail fungus problem. *Id.*

In his unsworn opposition brief, plaintiff states that he complained to defendant that the toenail fungus caused him pain. ECF No. 27 at 1 (claiming he told defendant that "my toes always feel like a can has been dropped on them"). According to plaintiff, defendant responded

6

by trying to convince plaintiff that he was not in pain and stated that there was "nothing" he could do for plaintiff. *Id.* The medical evidence fails to support these contentions. According to the record, plaintiff complained to prison officials once in 2006, and again in September 2012 through June 2013, that the toenail fungus caused him pain. ECF No. 6[2] at 15; Yount Decl., Ex. A at 7; Silkwood Decl., Ex. A at 4. Critically, there is no admissible evidence showing that defendant, who examined plaintiff in July and August of 2012, ever knew that the toenail fungus caused plaintiff any pain. For this reason, defendant could not have been deliberately indifferent to plaintiff's pain. *See Farmer*, 511 U.S. at 847 (to establish a claim for deliberate indifference "the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.")

Moreover, plaintiff saw defendant only twice for his toenail fungus. On both occasions, defendant did not ignore plaintiff's concerns but instead examined his toes and counseled him. He explained to plaintiff that his condition was untreatable and was a recurring cosmetic issue, and showed him how to properly care for the nails for the long term, by clipping and keeping them clean, and avoiding tight fitting shoes. Defendant's assessment and medical opinion that it was a cosmetic issue and that treatment was not indicated is not a basis for a deliberate indifference claim. Mere differences of opinions between an inmate and a doctor over proper medical treatment (or need for medical treatment at all) does not give rise to an Eighth Amendment violation. *See Estelle*, 429 U.S. at 105-07.

According to plaintiff, defendant should have at least prescribed one of several medications "to rid [him of] this painful problem." ECF No. 27 at 2. This, however, is precisely the type of difference in opinion that is not subject to an Eighth Amendment constitutional challenge. *See Clinton v. Meyers*, No. CV 08-4177-DOC OP, 2009 U.S. Dist. LEXIS 122875, at *22- 23 (C.D. Cal. Dec. 3, 2009), *adopted by* 2010 U.S. Dist. LEXIS 2177 (C.D. Cal. Jan. 8, 2010) (inmate's disagreement with medical staff's opinion that "treatment of nail fungus was

---

[2] Although plaintiff's complaint at ECF No. 6 was stricken from the docket as duplicative of the original complaint, *see* ECF No. 7, in an abundance of caution, the court has considered the exhibits thereto in resolving defendant's motion.

considered to be cosmetic in nature and not medically necessary" is insufficient to support a deliberate indifference claim); *Santos v. Santa Clara Co. Main Jail*, No. C13-4885 PJH (PR), 2014 U.S. Dist. LEXIS 105360, at *8 (N.D. Cal. July 30, 2014) (denial of Lamisil prescription for toenail fungus is a difference of opinion and insufficient to establish deliberate indifference). Plaintiff's disagreement with defendant's assessment that the toenail fungus was untreatable is not a valid basis for asserting a § 1983 claim. Nor can plaintiff, who has no medical training, dictate any specific treatment for his toenail fungus condition.

The undisputed facts show that defendant attempted to address all of plaintiff's concerns that were brought to his attention, and that he was not deliberately indifferent to plaintiff's medical needs for which he was aware or should have been aware. Plaintiff simply cannot establish a viable Eighth Amendment claim against defendant based on the undisputed facts. Accordingly, summary judgment must be granted in favor of defendant.

**IV.     Order**

Accordingly, it is hereby ORDERED that defendant's motion for summary judgment (ECF No. 24) is granted and that the Clerk is directed to enter judgment accordingly and close this case.

DATED: December 9, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE